IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELOISA MAXINE GRIEGO,

      Plaintiff,

v.                                                                            No. 15-cv-0555 SMV

CAROLYN W. COLVIN,
Acting Commissioner of Social Security Administration,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand an Administrative Agency Decision and Supporting Memorandum [Docs. 21, 22] (collectively, "Motion"), filed on November 10, 2015.  The Commissioner responded on January 7, 2016. [Doc. 27].  Plaintiff replied on February 3, 2016.  [Doc. 28].  The parties have consented to the undersigned's entering final judgment in this case.  [Doc. 25].  Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") erred in rejecting the treating opinion of Dr. Bankhurst.  Therefore, the Motion will be granted, and the case will be remanded for further proceedings consistent with this opinion.  *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. The decision "is not based on substantial evidence if it is overwhelmed

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481. The Tenth Circuit, however, has held that in some situations, a court must consider evidence beyond that which was before the ALJ. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207−08 (10th Cir. 2006); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Pursuant to 20 C.F.R. §§ 404.970(b) and 416.1470(b), any new and material evidence that relates to the period on or before the date of the ALJ's decision shall be considered by the Appeals Council in determining whether to review the ALJ's decision. If the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision. *O'Dell*, 44 F.3d at 858 (citing 20 C.F.R. § 404.981). Because a court reviews the final decision based on "the record as a whole," it will consider the evidence that was before the ALJ as well as the new and material evidence that was before the Appeals Council. *Id.* (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). A court reviews the Commissioner's decision, which is the ALJ's decision and not the Appeals Council's denial of review. *See id.* Considering all of the evidence in the administrative record, a court decides whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Maes*, 522 F.3d at 1096. Accordingly, here, the Court reviews the ALJ's decision considering the entire record, including the evidence submitted to the Appeals Council. *See* Tr. 528–30.

by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.   While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim.   20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity"; and (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or

3

equal one of the "Listings"[2] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work."   20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on June 11, 2012.  Tr. 12.  She alleged a disability-onset date of February 20, 2012.  *Id.*  Her claims were denied initially and on reconsideration.  *Id.*  Plaintiff requested a hearing before an ALJ.  *Id.*  ALJ Timothy G. Stewart held a hearing on May 16, 2014, in Metairie, Louisiana.  Tr. 12, 29.  Plaintiff appeared via videoconference with her attorney from Clovis, New Mexico.  Tr. 12, 29.  The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Thomas J. Meunier, Jr.  Tr. 12, 31–66; *see* Tr. 235.

The ALJ issued his unfavorable decision on May 30, 2014.  Tr. 23.  At step one, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 14.  Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two.  *Id.*  There, he found that Plaintiff suffered from one severe impairment: fibromyalgia.  *Id.*  At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  Tr. 16.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

Because none of Plaintiff's impairments met or equaled a Listing, the ALJ went on to assess Plaintiff's RFC.  Tr. 16–22.  In so doing, the ALJ evaluated the entire record, including the opinions of several medical sources.  *Id.*  He gave "little weight" to the opinion of Plaintiff's treating rheumatologist, Dr. Bankhurst,[3] because (1) his assessed limitations were not supported by objective medical evidence; (2) there were no observations of problems with Plaintiff's hands, fingers, or walking in her two most recent visits with Dr. Bankhurst (on October 14, 2013, and January 13, 2014); (3) she was "observed in September 2012 to run to her car [without issue];" and (4) Plaintiff had an unremarkable physical examination in June 2013 even though she had been without pain medication.  Tr. 21–22.

The ALJ gave "some weight" to the conclusions of the non-examining physicians Drs. Pallin and Armstrong[4] but found that "limitations relative to [Plaintiff's] ability to use her

---

[3] Dr. Bankhurst indicated that Plaintiff suffers from chronic musculoskeletal pain that "constantly" interferes with the attention and concentration required for simple tasks.  Tr. 503.  Dr. Bankhurst opined that Plaintiff's pain caused the following limitations: (1) walking half a city block before experiencing pain, (2) sitting for 10 minutes at a time and 1 of 8 hours in a workday, (3) standing and walking for 10 minutes at a time and 1–2 hours in an 8-hour workday, (4) requiring the ability to shift between sitting, standing, and walking, (5) requiring unscheduled breaks every hour for 15 minutes in duration and four or more absences per month, (6) lifting up to 10 pounds occasionally, (7) using her hands, fingers, and arms for grasping, fine manipulations, and reaching only 20% of the workday. Tr. 503–04.  On March 23, 2015, Dr. Bankhurst provided a letter to Social Security indicating that Plaintiff continued to suffer from chronic musculoskeletal fatigue and fibromyalgia, could not afford her prescribed medication (Lyrica) with her insurance, and she remained disabled.  Tr. 529.

[4] The record in this case appears to indicate a change in the format of Social Security administrative records.  The change in format may serve some purpose for the agency, but it is terribly difficult to organize for a reviewing court.  An inordinate amount of time was required to identify the doctor's opinions.  They are buried within packets of non-medical-opinion information.  The opinions are not confined to their own pages, as they were in the past; instead, they share pages with non-opinion information that appears to have been authored by non-medical review staff.  All of the packet text shares the same font and formatting, and the same information is duplicated over and over.  (For example, Dr. Armstrong's opinion appears four times.)  After an unfortunately gratuitous amount of study, the Court finds that Dr. Pallin assessed the following limitations: (1) lift and carry 20 pounds occasionally and 10 pounds frequently, (2) standing, walking, and sitting, for 6 of 8 hours in a workday, (3) frequently engage in all postural forms except balancing, which was unlimited, (4) avoidance of extreme cold or vibrations, and (5) a manipulative restriction in fingering, which he opined "limited" Plaintiff's use of both hands to "no more than

upper extremities, particularly her hands or fingers, are simply not supported by the balance of the medical evidence." Tr. 22.

Based (at least in part) on these opinions, the ALJ found that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except with frequent climbing ladders, ropes, scaffolds, ramps, and stairs, and frequent stopping, kneeling, crouching, or crawling.

Tr. 16.  At step four, the ALJ found that Plaintiff could perform her past relevant work as a cashier and as a short order cook.[5]  Tr. 22–23.  Accordingly, the ALJ found that Plaintiff had not been under a disability as defined by the Act during the relevant time period, and he denied the claim.  Tr. 23.  The Appeals Council denied Plaintiff's request for review on April 28, 2015.  Tr. 1–5.  Plaintiff timely filed the instant action on June 30, 2015.  [Doc. 1].

## Analysis

The ALJ in this case erred in rejecting the opinion of Plaintiff's treating physician, Dr. Bankhurst.  Because proper evaluation of Dr. Bankhurst's opinion may render moot the other alleged errors, the Court need not reach them at this time.

### The Treating Physician Rule

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the

---

frequently" engaging in "repetitive fine manipulation."  Tr. 77–80, 89–91.  On reconsideration, in June of 2013, non-examining, state agency consultant, Nancy Armstrong, MD, affirmed Dr. Pallin's opinion as written.  Tr. 101–04, 115–18, 129–32, 143–46.

[5] Having found that Plaintiff was able to return to her past relevant work at step four, the ALJ was under no duty to proceed to step five.  Nevertheless, the ALJ went on to reference testimony by the VE that could be interpreted as supporting a step-five finding.  Tr. 22.  The ALJ himself never made any step-five finding, though.  Tr. 22–23.

medical evidence and are consistent with the record.  20 C.F.R. § 404.1527(c)(2).  This is known as the "treating physician rule."  *Langley*, 373 F.3d at 1119.  The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight.  *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

In order to receive controlling weight, treating physician opinions must be both supported by medical evidence and consistent with the record.  If not, the opinions may not merit controlling weight but still must be given deference and weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. § 404.1527(c). However, not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary.  What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight she ultimately assigns to the opinions.  *Langley*, 373 F.3d at 1119; *see* 20 C.F.R. § 404.1527(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

7

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two phases.  First, the ALJ must find that the opinion is not supported by medical evidence and/or is not consistent with the record.  Second, the ALJ must still give deference to the opinion and weigh it according to the factors listed above.  Like all findings, an ALJ's findings in these two phases must be supported by substantial evidence.

<u>Fibromyalgia and Treating Physician Opinions</u>

"Because proving the disease is difficult, fibromyalgia presents a conundrum for insurers and courts evaluating disability claims."  *Welch v. UNUM Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) (ellipsis and internal quotation marks omitted) (collecting cases); *see also Wilson*, 602 F.3d at 1143 (recognizing that "complaints of severe pain that do not readily lend themselves to analysis by objective medical tests are notoriously difficult to diagnose and treat") (collecting cases, including cases addressing fibromyalgia).  "Since fibromyalgia only manifests itself through clinical symptoms, there are no laboratory tests that can confirm the diagnosis."  *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 627 n.1 (10th Cir. 2003).

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.  The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

8

*Gilbert v. Astrue*, 231 F. App'x 778, 783 (10th Cir. 2007) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).  Although the existence or severity of fibromyalgia may not be determinable by objective medical tests, the Tenth Circuit Court of Appeals has suggested that the physical limitations imposed by the condition's symptoms can be objectively analyzed. *E.g., Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 627 n.1 (10th Cir. 2003); *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n.5 (1st Cir. 2003) ("While the diagnos[i]s of . . . fibromyalgia may not lend [it]sel[f] to objective clinical findings, the physical limitations imposed by the symptoms . . . do lend themselves to objective analysis.").

When a treating physician opines as to the functional limitations resulting from fibromyalgia, an ALJ may not reject that opinion *solely* based on a lack of objective supporting evidence.  For example, in *Gilbert*, the Tenth Circuit reversed an ALJ's rejection of a treating opinion (about the functional limitations resulting from fibromyalgia) when that rejection was based on a lack of objective evidence and the ALJ had failed to address the non-objective evidence that supported the treating opinion.   231 F. App'x at 783–84.

However, in *Tarpley* and *Romero*, the Tenth Circuit affirmed the ALJs' rejections of the treating opinions because the rejections were based on more than the absence of objective support.  In *Tarpley*, the ALJ found very little in the doctors' notes supporting their assessed functional levels.  Instead, the ALJ found that evidence that seemed to contradict the doctors' assessed limitations (e.g., the plaintiff had full range of motion in her joints, had normal strength, walked and moved without much difficulty, had been able to care for her personal needs, did household chores, went shopping, found relief with medication, and on her doctors'

9

recommendations, stayed active with friends and family).  601 F. App'x at 643.  In *Romero*, the ALJ did not rely on lack of objective medical evidence alone in rejecting the treating physician's opinion about the functional limitations of the plaintiff's fibromyalgia, which would have been error.  563 F. App'x at 621.  Instead, the ALJ also relied on the plaintiff's daily activities and that she experienced relief from medication and exercise as prescribed by her doctor.  *Id.* at 621–22.

<u>In this case, the ALJ erred in rejecting Dr. Bankhurst's treating opinion.</u>

Here, the ALJ rejected Dr. Bankhurst's opinion because (1) the assessed limitations were not supported by objective medical evidence; (2) there were no observations of problems with Plaintiff's hands, fingers, or walking in her two most recent visits with Dr. Bankhurst (on October 14, 2013, and January 13, 2014); (3) she was "observed in September 2012 to run to her car [without issue];" and (4) Plaintiff had an unremarkable physical examination in June 2013 even though she had been without pain medication.  Tr. 21–22.

Although the question is close, the Court finds that these reasons are not legally sufficient to support the ALJ's rejection of Dr. Bankhurst's treating opinion about the functional limitations of Plaintiff's fibromyalgia.  Although the ALJ's findings may satisfy the first phase of the treating physician rule, they do not satisfy the second phase.

"The lack of objective test findings noted by the ALJ is not determinative of the severity of [Plaintiff's] fibromyalgia," *Gilbert*, 231 F. App'x at 784, but the ALJ here did not rely solely on the absence of objective medical evidence.  Considered together, the ALJ's reasons satisfy

10

the first phase of the treating physician rule (requiring a finding as to whether the doctor's opinion is supported by medical evidence and/or is consistent with the record).

However, the ALJ's reasons are not enough to satisfy the second phase (requiring weighing of at least some of the *Watkins* factors to determine the weight that should be given to the treating physician's opinion). At most, the ALJ's reasons correspond to the third and fourth *Watkins* factors (the degree to which the physician's opinion is supported by relevant evidence and consistency between the opinion and the record as a whole).

Under different circumstances, those reasons might suffice. Here, though, the ALJ rejected Dr. Bankhurst's opinion in favor of Dr. Pallin's and Dr. Armstrong's opinions.[6] Those opinions are expressly contingent on Plaintiff's having rheumatoid arthritis. As the ALJ noted in his decision, both doctors "remarked that[,] assuming [Plaintiff]'s diagnosis of rheumatoid arthritis was correct, and assuming compliance with standard rheumatoid treatment by a qualified rheumatologist, [Plaintiff] should be able to function as described herein, with the possible exception of acute flares." Tr. 21–22. The ALJ, though, did not find that Plaintiff has rheumatoid arthritis. He found that she has fibromyalgia. Tr. 15. Accordingly, by their own terms, the opinions of Drs. Pallin and Armstrong cannot support the ALJ's decision. Considering that their opinions are irrelative, it was reversible error for the ALJ to reject Dr. Bankhurst's treating opinion in favor of the opinions of the non-examining doctors.

_____

[6] The ALJ did not adopt Dr. Pallin's and Dr. Armstrong's opinions (which are identical to each other) in every respect. Tr. 21–22. The ALJ rejected their opinions as to Plaintiff's ability to use her hands and fingers. *Id.* Drs. Pallin and Armstrong believed that Plaintiff could not perform repetitive fine manipulation more than frequently. *E.g.*, Tr. 79, 103. The ALJ, however, found that this limitation was "simply not supported by the balance of medical evidence," and thus, he rejected it. Tr. 22. He also rejected (without explanation) their opinion that Plaintiff must avoid concentrated exposure to cold and vibration. *Compare* Tr. 16 (RFC), *with* Tr. 79, 103 (opinions regarding cold and vibration).

**Conclusion**

Remand is warranted for reevaluation of Dr. Bankhurst's opinion.  Proper evaluation of his opinion may render moot Plaintiff's other claimed errors.  Therefore, the Court declines to address them at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand an Administrative Agency Decision [Doc. 21] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**